UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOSHUA KERNES, | 15cv00659 (CM) (DF) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| -against- | |
| GLOBAL STRUCTURES, LLC, JOHN J. HILDRETH, | |
| Defendants. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/1/016

**TO THE HONORABLE COLLEEN MCMAHON, U.S.D.J.:**

The above-captioned action, in which plaintiff Joshua Kernes ("Plaintiff"), has asserted

Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims against

defendants Global Structures, LLC ("Global Structures") and John J. Hildreth ("Hildreth"),

(collectively, "Defendants"), is currently before this Court for a damages inquest following a

default judgment entered in Plaintiff's favor.  For the reasons that follow, I recommend that

Defendants be held jointly and severally liable to Plaintiff for damages in the amount of

$14,841.00, representing (a) $9,145.69 in unpaid wages and liquidated damages, (b) $269.58 in

prejudgment interest, (c) $4,500.00 in attorneys' fees, and (d) $925.73 in costs.

## BACKGROUND

MEMO ENDORSED

### A.    Factual Background

Given Defendants' default, the well-pleaded allegations contained in Plaintiff's

Complaint are deemed to be true, except for those relating to damages.  *See, e.g., Santillan v.*

*Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011).  The underlying facts summarized herein are

taken from Plaintiff's Complaint, dated January 29, 2015 ("Compl." (Dkt. 1)), and the Affidavit

and accompanying exhibits that Plaintiff has submitted in support of his Proposed Findings of

3/1/2016
The time for filing objections has passed. No objections have
been filed. The court adopts the Report as its opinion.
The Clerk should enter judgment against defendants
accordingly.        Colleen McMahon

Fact and Conclusions of Law (*see* Affidavit of Joshua Kernes, sworn to Sept. 2, 2015 ("Kernes Aff.") (Dkt. 25-1)).

Plaintiff is a structural welder who was apparently employed by Defendants during the fall of 2014.[1] (Compl. ¶¶ 27-28.) Plaintiff asserts that, during the time period relevant to this action, from November through mid-December, 2014, Defendants "employed at least 40 employees in the New York City area, as welders and other non-exempt construction workers or laborer[s] . . . ." (*Id.* ¶ 13.) Plaintiff also asserts that, "at all times relevant to this action, [defendant] Hildreth was the President, CEO, Principal, and Founder of Global Structures." (*Id.* ¶ 9.) Further, to establish FLSA coverage in this case, Plaintiff claims that defendant Global Structures "engaged in the production of goods for commerce, and/or [the] handling, selling, or otherwise working on goods or materials that ha[d] been moved in or produced for commerce by any person" and that, at all times relevant to this action, Global Structures' "annual gross volume of sales or business done was in excess of five hundred thousand dollars." (*Id.* ¶¶ 7-8.) Plaintiff further states that, while employed by Defendants, he "handled goods that had been transported through interstate commerce," specifically "beams that had been transported into New York City from New Jersey." (Kernes Aff. ¶ 8.)

According to Plaintiff, when he began working for Defendants, he was compensated at a regular hourly rate of $25.00 per hour, and at an overtime rate of $37.50 per hour. (Kernes Aff. ¶ 9, Ex. B.) He claims, however, that, beginning on or about November 14, 2014, he was not paid at all for the work he performed on behalf of Defendants during three different pay periods.

---

[1] While Plaintiff complains that Defendants first failed to pay him properly in November 2014 (*see* Compl. ¶ 28), he has submitted documentation showing that he was employed by Defendants, at least periodically, from as early as September 8, 2014 (*see* Kernes Aff., Ex. B (pay statements)).

2

(Compl. ¶¶ 28-29; *see also* Kernes Aff. ¶¶ 10-17.)  Specifically, Plaintiff claims that he received

a paycheck on November 14, 2014, which should have compensated him for work performed

during the pay period of November 3-9, 2014, but that he was unable to cash the check because

the payor's account had insufficient funds.  (Kernes Aff. ¶ 10, Ex. A.)  According to Plaintiff, he

is owed $1,243.75 for the November 14 check.  (*Id.* ¶ 12, Ex. A (Plaintiff's November 14, 2014

paycheck, reflecting that, between November 3 and 9, 2014, Plaintiff worked 40 hours at a rate

of $25.00 per hour, as well as 6.5 hours of overtime, at a rate of $37.50, for a gross pay of

$1,243.75).)

     Plaintiff claims that he then worked approximately 50 hours for Defendants during each

of the next two pay periods,[2] but that he "did not receive a paycheck or any other compensation

from Defendants for either pay period."  (*Id.* ¶ 13.)  According to Plaintiff's calculations, he was

not compensated for approximately $2,750.00 in regular and overtime wages that he earned

during those two pay periods, combined.  (*Id.* ¶ 14.)  Thus, Plaintiff contends that, in total, he has

suffered monetary losses in the amount of $3,993.75.  (*Id.* ¶ 17.)  To support his calculation of

lost wages, Plaintiff has provided the Court with representative pay statements demonstrating the

hours he worked and the payment he received while employed by Defendants, for three pay

periods from September and October, 2014.  (*Id.*, Ex. B.)  The pay statements demonstrate that,

between September 8 and 14, 2014, Plaintiff worked 40 hours at a regular hourly wage of

---

[2] Although there is some ambiguity as to whether Plaintiff claims to have worked 50 hours per week during *each* of the two subsequent pay periods, or to have worked a *total* of 50 hours for the two pay periods combined (*see* Kernes Aff. ¶ 13 ("For the next two pay periods, I worked approximately fifty (50) hours for Defendants . . . ")), based on Plaintiff's damages calculations it appears that he is claiming that he worked 50 hours during each pay period (*id.* ¶ 14).  Moreover, according to the representative pay stubs that Plaintiff has provided to this Court, documenting his work history, it is evident that Plaintiff routinely worked from 45 to 60 hours during each pay period.  (*Id.*, Exs. A, B.)

$25.00, plus 18.5 hours of overtime at a rate of $37.50, earning a total of $1,693.75 (*id.*); that, between September 15 and 21, 2014, Plaintiff worked 40 hours at a regular hourly wage of $25.00, plus 8.5 hours of overtime at a rate of $37.50, earning a total of $1,318.75 (*id.*); and that, between October 13 and 19, 2014, Plaintiff worked 40 hours at a regular hourly wage of $25.00, plus 14.5 hours of overtime at a rate of $37.50, earning a total of $1,543.75 (*id.*).

Plaintiff claims that he contacted management personnel for defendant Global Structures, as well as defendant Hildreth, directly, to inquire about his pay, but that the issue was not resolved and he never received compensation for the pay periods in question. (*Id.* ¶ 16.) Defendants apparently closed their job site in December 2014. (Compl. ¶ 28.)

### B.    Procedural History

Plaintiff commenced this action by filing a Complaint on January 29, 2015, pleading FLSA and NYLL claims on behalf of himself and others similarly situated, to recover regular and overtime wages for work performed on behalf of Defendants. (Compl. ¶ 1 (Dkt. 1).) Plaintiff requested declaratory and injunctive relief, as well as monetary damages consisting of compensation for the wages he was not paid, liquidated damages under the FLSA and NYLL, prejudgment interest on the unpaid wages pursuant to the NYLL, and reasonable attorneys' fees and costs. (*Id.* ¶ 2.)

Defendant Global Structures was served with process on March 9, 2015 (Dkt. 6), and defendant Hildreth was served on April 16, 2015 (Dkt. 15). Both Defendants failed to appear in the action, and Plaintiff requested that the Clerk of Court enter default against each. (Dkts. 7, 16.) The Clerk of Court entered default against Global Structures on April 1, 2015 (Dkt. 8), and against Hildreth on May 11, 2015 (Dkt. 17). Upon Plaintiff's motions for default judgment (Dkts. 9, 20), the Honorable Colleen McMahon, U.S.D.J., granted a default judgment

against Global Structures on May 11, 2015 (Dkt. 18), and against Hildreth on July 27, 2015 (Dkt. 23).

Having determined liability, Judge McMahon then referred the matter to this Court for an inquest on damages, and on August 8, 2015, this Court directed Plaintiff to file and serve on Defendants Proposed Findings of Fact and Conclusions of Law concerning damages. (Dkt. 24.) This Court specifically cautioned Defendants that, if they failed to respond to Plaintiff's submission or request an in-court hearing by October 12, 2015, this Court would issue a Report and Recommendation concerning damages on the basis of Plaintiff's written submissions alone. (Dkt. 24.) Plaintiff timely filed his Proposed Findings of Fact and Conclusions of Law on September 22, 2015 (Dkt. 25), and Defendants did not respond or otherwise contact this Court.

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

#### A. Default Judgment and Damages

"[D]efault is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). Although a "'default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability,'" it does not reach the issue of damages. *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). In conducting a damages inquest, the Court accepts as true all of the factual allegations of the complaint, except those relating to damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 64-65 (2d Cir. 1981). A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce

evidence to prove damages suffered and the court will then determine whether the relief flows from the facts) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).

Where a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages, *see Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court "should take the necessary steps to establish damages with reasonable certainty"), and the Court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs, *see, e.g., Garden City Boxing Club, Inc. v. Hernandez*, No. 04cv2081 (LAP) (DF), 2008 WL 4974583, at *4-5 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing). A plaintiff bears the burden to "introduce sufficient evidence to establish the amount of damages with reasonable certainty." *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv01369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013). Although a plaintiff is entitled to all reasonable inferences in its favor based upon the evidence submitted, *see U.S. ex rel. Nat. Dev. & Const. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation), if a plaintiff fails to demonstrate its damages to a reasonable certainty, then the Court should decline to award any damages, even where liability has been established through default, *see Lenard v. Design Studio*, 889 F. Supp. 2d 518, 538 (S.D.N.Y. 2012) (adopting report and recommendation).

While the Court may hold a hearing to assess the amount of damages that should be awarded on a default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as

6

necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves

the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v.

ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers,

Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given much discretion to determine whether an

inquest need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R.

Civ. P. 55(b)(2) "allows but does not require . . . a hearing").

### B.   Minimum Wage and Overtime Damages<br>Available Under the FLSA and NYLL

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum

wage for the first 40 hours that he or she worked in a given work week.  29 U.S.C. § 206(a).

Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per

week), at a "rate not less than one and one-half times the regular rate at which [the employee] is

employed." *Id.*, § 207(a)(1).  Thus, where an employee is not paid at least the minimum wage,

the FLSA will provide recovery of the statutory minimum wage for the first 40 hours per week,

plus one and one-half times the minimum wage for hours worked thereafter.  *See, e.g., Chun Jie

Yin v. Kim*, No. 07 CV 1236 (DLI) (JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008)

(adopting report and recommendation and noting that "[t]he FLSA requires employers to pay

their employees the statutory minimum wage as well as a premium (150 percent of the statutory

minimum wage) for hours worked above 40 hours per week").  A plaintiff with a successful

minimum-wage claim under the FLSA is entitled to recover damages up to, but not exceeding,

these statutory amounts.  *Santillan*, 822 F. Supp. 2d at 293.  Pursuant to the NYLL, however, a

prevailing plaintiff is entitled to recover "the full amount of wages owed, not just the statutory

minimum wage for the hours worked." *Chun Jie Yin*, 2008 WL 906736, at *4; *see also* N.Y.

7

Case 1:15-cv-00659-CM-DCF   Document 26   Filed 02/09/16   Page 8 of 25

Lab. Law § 198(3) ("All employees shall have the right to recover full wages . . . accrued during the six years previous to the commencing of such action.").

Although a plaintiff may be "entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the [NYLL], [he or she] may not recover twice." *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08cv3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010). Instead, "[w]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Wicaksono v. XYZ 48 Corp.*, No. 10cv3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) *report and recommendation adopted*, No. 10cv3635 (LAK), 2011 WL 2038973 (S.D.N.Y. May 24, 2011) (internal quotation marks and citation omitted).[3]

## C.   Liquidated Damages Pursuant to the FLSA and NYLL

In addition to unpaid minimum wages and overtime pay, a plaintiff may recover liquidated damages under both the FLSA, *see* 29 U.S.C. § 216(b), and the NYLL, *see* N.Y. Lab. Law § 198(1–a). Under the FLSA, a plaintiff is entitled to recover liquidated damages in an amount equal to the amount of unpaid minimum wages or overtime pay that the plaintiff was improperly denied, unless the employer demonstrates that it acted in good faith and had a reasonable basis for believing that it had not violated the FLSA. *See* 29 U.S.C. §§ 216(b) (providing that plaintiff-employees who prevail under either Section 206 or 207 of the FLSA are

---

[3] Under the NYLL (but not the FLSA), in addition to receiving damages for unpaid regular wages and overtime, an employee is entitled to receive "spread-of-hours" pay, which is "'one additional hour of pay at the basic minimum hourly rate' for any workday that lasts longer than ten hours, including 'intervals off duty.'" *Wicaksono*, 2011 WL 2022644, at *6 (quoting 12 NYCRR § 146–1.6(a-c)); *see also* N.Y. Lab. Law §§ 650 *et seq.* Here, Plaintiff does not seek spread-of-hours damages, and, thus, this Court assumes that he is not contending that he worked more than 10 hours per day on behalf of Defendants.

entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime

compensation, as the case may be, and in an additional equal amount as liquidated damages"); 29

U.S.C. § 260 (mandating that an employer pay liquidated damages unless the employer

demonstrates that he was acting in "good faith" and "had reasonable grounds for believing" that

he was not acting in violation of the FLSA); *see also Galeana v. Lemongrass on Broadway

Corp.*, No. 10cv7270 (GBD) (MHD), 2014 WL 1364493, at *7 (S.D.N.Y. Apr. 4, 2014)

(adopting report and recommendation).

 "As the Second Circuit has observed, 'the employer bears the burden of establishing, by

plain and substantial evidence, subjective good faith and objective reasonableness. . . . The

burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the

norm, single damages the exception.'" *See Galeana*, 2014 WL 1364493, at *7 (quoting *Reich v.

S. New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (other internal

quotation marks and citations omitted)); *Jin M. Cao*, 2010 WL 4159391, at *3; *Yu G. Ke v.

Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008); *see also* 29 U.S.C. § 260. Where

a Plaintiff is entitled to liquidated damages under the FLSA, but has been awarded wage and

overtime damages pursuant to the NYLL because state law provided the greater relief, the Court

calculates FLSA liquidated damages based on "'the amount of actual damages that would have

been awarded had the federal minimum wage rate applied.'" *Angamarca v. Pita Grill 7 Inc.*,

No. 11cv7777 (JGK) (JLC), 2012 WL 3578781, at *8 (S.D.N.Y. Aug. 2, 2012) (quoting

*Wicaksono,* 2011 WL 2022644, at 7), *report and recommendation adopted* Dec. 14, 2012

(slip op.).

 A plaintiff is also entitled to recover liquidated damages pursuant to the NYLL, in an

amount equal to "one hundred percent of the total . . . underpayments found to be due." *See*

9

*Angamarca*, 2012 WL 3578781, at *8 (quoting N.Y. Lab. Law § 663(1), and noting that, prior to April 11, 2011, the statute allowed for a plaintiff to recover only 25 percent of his unpaid wages as liquidated damages); *see also Najnin v. Dollar Mountain, Inc.*, No. 14cv5758 (WHP), 2015 WL 6125436, at *2 (S.D.N.Y. Sept. 25, 2015) ("Prior to April 9, 2011, [NYLL] liquidated damages were calculated at 25 percent of the lost pay. From April 9, 2011 forward, these state damages are set at 100 percent of unpaid wage."). Further, similar to the FLSA, "[t]he NYLL now provides for a liquidated damages award 'unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'" *McLean v. Garage Management Corp.*, No. 09cv9325 (DLC), 2012 WL 1358739, at *8 (S.D.N.Y. Apr. 19, 2012) (quoting NYLL § 198(1-a) and contrasting the current statute with a previous version, wherein plaintiffs were entitled to recover liquidated damages only where they could prove that the employers' NYLL violations were "wilfull").

While both the FLSA and the NYLL provide for the payment of liquidated damages, the purpose of the liquidated damages provisions is different under each statute. Under the FLSA, liquidated damages are considered compensatory, rather than punitive. *See Santillan*, 822 F. Supp. 2d at 297 (noting that "[l]iquidated damages under the FLSA are compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the FLSA) (internal quotation marks and citation omitted)). Liquidated damages pursuant to the NYLL, in contrast, have been found to "'constitute a penalty, to deter an employer's willful withholding of wages due.'" *Id.* (quoting *Reilly v. NatWest Mkts. Group Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)).

Courts within this Circuit are split as to whether a plaintiff may recover liquidated damages under both the FLSA and the NYLL. *See Chen v. Yuen*, No. 04cv06579 (GBD) (KNF),

10

2015 WL 7758532, at *4 (S.D.N.Y. Dec. 1, 2015) (noting that "[t]here is no appellate authority

as to whether a plaintiff may recover cumulative (sometimes called 'simultaneous' or 'stacked')

liquidated damages under the FLSA and NYLL," and describing the district courts in the Circuit

as being "deeply divided" on this issue (internal quotation marks and citations omitted)).

Some courts have declined to award simultaneous liquidated damages on the ground that

"'the distinction between compensatory and punitive for characterizing liquidated damages under

the FLSA and NYLL [is] semantic, exalting form over substance.'" *Inclan v. New York Hosp.

Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (quoting *Gortat v. Capala Bros.*, 949 F.

Supp. 2d 374, 381 (E.D.N.Y. 2013)); *see also id.* (finding an award of simultaneous liquidated

damages to be "inappropriate because '[b]oth [FLSA and NYLL liquidated] damages seek to

deter wage-and-hour violations in a manner calculated to compensate the party harmed'"

(quoting *Chuchuca v. Creative Customs Cabinets Inc.*, No. 13cv1175 (RLM), 2014 WL

6674583, at *16 (E.D.N.Y. Nov. 25, 2014))).

The emerging majority view in this Circuit, however, appears to be that simultaneous

liquidated damages *should* be awarded, based on the fact that such damages under the FLSA and

the NYLL are supposed to "serve fundamentally different purposes." *Jin M. Cao*, 2010 WL

4159391, at *5 (internal quotation marks and citation omitted); *Santillan*, 822 F. Supp. 2d at 297

(same); *Yu Y. Ho v. Sim Enterprises, Inc.*, No. 11cv2855 (PKC), 2014 WL 1998237, at *18

(S.D.N.Y. May 14, 2014) (noting that, while courts are divided as to whether plaintiffs may

recover liquidated damages under both statutes, a "majority" have held simultaneous recovery is

permissible); *Angamarca*, 2012 WL 3578781, at *8 (awarding liquidated damages under both

statutes, collecting cases, and noting that "the majority of cases allow for 'simultaneous

recovery' because recovery of liquidated damages under federal and state law serve different functions").

### D.    Burdens of Proof on Damages

In an FLSA case, the burden falls on the plaintiff-employee to demonstrate "'that he performed work for which he was not properly compensated.'" *Santillan*, 822 F. Supp. 2d at 293 (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, *et seq.*). As noted by the Supreme Court, however, employees "'seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy.'" *Id.* (quoting *Anderson*, 328 U.S. at 687). Employers, on the other hand, have a duty to maintain such records pursuant to Section 11(C) of the FLSA, and, thus, the "easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secur[e] the production of such records' from the employer." *Id.* (quoting *Anderson*, 328 U.S. at 687).

A defaulting defendant "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages." *Id.* As a result, where a defendant defaults, a plaintiff may meet his burden of proof "by relying on recollection alone" to establish that he "performed work for which he was improperly compensated." *Id.* (finding, in a default context, that plaintiff provided a "sufficient basis for [the] determination of damages" where he "submitted a sworn declaration containing information as to hours worked and rates of pay based on estimation and recollection," even where the plaintiff's submission was "general and not detailed" (internal quotation marks and citations omitted)). "Moreover, in the absence of rebuttal by defendants . . . [the employee's]

recollection and estimates of hours worked are presumed to be correct." *Id.* (internal quotation marks and citations omitted).

Under New York law, the courts "go[] one step further and require[] that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Id.* (quoting N.Y. Lab. Law § 196-a).

### E.    **Prejudgment Interest**

Generally, "[t]he decision to award prejudgment interest is discretionary, and is based on the need to fully compensate the wronged party, [the] fairness of the award, and the remedial purpose of the statute involved." *Najnin*, 2015 WL 6125436, at \*4.  A plaintiff who recovers liquidated damages under the FLSA, however, is not also entitled to prejudgment interest on his or her FLSA damages. *See, e.g.*, *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("'It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" (quoting *Begum v. Ariba Disc., Inc.*, No. 12cv6620 (DLC) (KNF), 2015 WL 223780, at \*3 (S.D.N.Y. Jan. 16, 2015))).  Given that FLSA liquidated damages serve a compensatory, rather than punitive, purpose, "there is no need to employ pre-judgment interest to restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection violation." *Id.*

In contrast, under the NYLL, a plaintiff may recover both liquidated damages and prejudgment interest. *See Fermin,* 93 F. Supp. 3d at 48; *Begum,* 2015 WL 223780, at \*3. "[B]ecause New York State views liquidated damages as punitive, and not compensatory . . . pre-judgment interest is not a duplicative damages award." *Fermin,* 93 F. Supp. 3d at 48 (explaining that the purpose of liquidated damages under the NYLL is to "constitute a penalty"

13

on an employer's willful withholding of wages due, while the purpose of pre-judgment interest is "to compensate a plaintiff for the loss of use money"); *see also Janus v. Regalis Const., Inc.*, No. 11cv5788 (ARR) (VVP), 2012 WL 3878113, at *8-9 (E.D.N.Y. July 23, 2012), *report and recommendation adopted*, 2012 WL 3877963 (Sept. 4, 2012). A plaintiff may recover both NYLL liquidated damages and prejudgment interest, "even where liability is found not only under the NYLL but also under the FLSA." *Begum*, 2015 WL 223780, at *3 (citing *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n. 7 (2d Cir. 2011)). Under the state law, "[p]rejudgment interest is calculated . . . on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia*, 2013 WL 3023505, at *8 n. 11 (citing *Janus*, 2012 WL 3878113, at *8).

"Pursuant to [New York] state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." *Najnin*, 2015 WL 6125436, at *4; N.Y. C.P.L.R. §§ 5001, 5004. As to the date from which interest should be found to run, "Section 5001(b) sets forth two methods of calculating prejudgment interest." *Alvarez v. 215 N. Ave. Corp.*, No. 13cv049 (NSR) (PED), 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015) (adopting report and recommendation).

> First, interest may be calculated from 'the earliest ascertainable date the cause of action existed,' N.Y. C.P.L.R. § 5001(b). However, '[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.' *Id.*

*Alvarez*, 2015 WL 3855285, at *3. It is within the Court's "'wide discretion'" to "'determine[] a reasonable date from which to award prejudgment interest.'" *Id.* (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)).

### F.    Joint and Several Liability

The FLSA imposes liability on "employers," a group that is "broadly define[d] [to

include] 'any person acting directly or indirectly in the interest of an employer in relation to an

employee.'" *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342-43 (S.D.N.Y. 2005)

(quoting 29 U.S.C. § 203(d)). "The definition of "employer" is similarly expansive under New

York law, encompassing any 'person employing any [employee].'" *Id.* (quoting N.Y. Lab. L.

§§ 2(6)), 651(6)). To determine whether a party qualifies as an "employer" under both statutes'

"generous definitions," the relevant inquiry is "'whether the alleged employer possessed the

power to control the workers in question . . . with an eye to the economic reality presented by the

facts of each case.'" *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir.

1999)).

"[W]hen examining the 'economic reality' of a particular situation," courts will evaluate

various factors, none of which, individually, is dispositive. *Id.* These factors include "'whether

the alleged employer (1) had the power to hire and fire the employees, (2) supervised and

controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employment records.'" *Id. (quoting Herman,* 172 F.3d

132, 139 (2d Cir. 1999)). Further, "'[t]he overwhelming weight of authority is that a corporate

officer with operational control of a corporation's covered enterprise is an employer along with

the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid

wages.'" *Id.* (quoting *Moon v. Kwon,* 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002), and finding

defendants jointly and severally liable under both the FLSA and the NYLL).

15

### G.    Attorneys' Fees and Costs

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover her reasonable

attorney's fees and costs." *Najnin*, 2015 WL 6125436, at \*4; *see* 29 U.S.C. § 216(b); NYLL

§ 198(1-3). The Court has discretion to determine the amount of attorneys' fees that would be

appropriate to satisfy a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). As a general

matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the

lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by

the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar

calculation creates a "presumptively reasonable fee" (internal quotation marks omitted; citing

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183

(2d Cir. 2008) and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010))). The party seeking

fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v.

Stenson*, 465 U.S. 886, 897 (1984), and must provide the Court with sufficient information to

assess the fee application, *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d

1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates]

prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience, and reputation." *Blum*, 465 U.S. at 895 n.11. Although the fee applicant has the

burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*,

17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates

charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State

Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). In *Arbor Hill*, the

Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be

16

willing to pay." *Arbor Hill*, 522 F.3d at 190. In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly. *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours). In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as the degree of counsel's success, *see Hensley*, 461 U.S. at 436.

In addition to the lodestar amount, "attorneys' fees" may include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). These expenses may include photocopying, travel, telephone costs, and postage, *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987), and, in the context of a fee-shifting provision, charges for online research, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004).

17

## II.    PLAINTIFF'S DAMAGES CLAIMS

### A.    Plaintiff's Claim for Regular Wage and Overtime Damages

Plaintiff claims that, apart from interest and liquidated damages, he has suffered core monetary losses in the amount of $3,993.75 as the result of work he performed – but was not compensated for – on behalf of Defendants, during November and December of 2014. (Kernes Aff. ¶ 17.) As a threshold matter, Plaintiff's submissions are sufficient to meet his burden of proof to establish minimum wage and overtime damages, such that a hearing here is not required. *See Fustok*, 873 F.2d at 40 (noting that the district court has the discretion to determine whether a hearing is necessary). In the context of a default, where the defendant has neither provided any employment records, nor otherwise rebutted the plaintiff's damages claims, it is sufficient for the plaintiff to rely on his "recollection alone" to establish the hours he worked and the rates he should have been paid. *Santillan*, 822 F. Supp. 2d at 293. Here, Plaintiff has provided this Court with a sworn affidavit containing information about the hours he worked and the rates of pay he earned, based not just on his own recollection, but also on prior paychecks that he received. (*See generally*, Kernes Aff.) This is enough to enable the Court to assess damages.

Specifically, Plaintiff's submissions adequately demonstrate that his regular rate of pay was $25.00/hour, and that his overtime rate was 150 percent of that rate, or $37.50/hour. (Kernes Aff. ¶ 9.) In addition, based on a copy of the paycheck that he was unable to cash for the November 3-9, 2014 pay period, Plaintiff has shown that he was not compensated for 46.5 hours of work for that period. (*Id.* ¶ 12, and Ex. A (paycheck showing that Plaintiff was to be compensated, for that period, for 40 hours of work at his regular pay, plus 6.5 hours of overtime).) Finally, Plaintiff has attested to his recollection that he worked 50 hours (*i.e.*, 40 hours, plus 10 hours of overtime) during each of two subsequent pay periods, but received no

18

compensation for that work. (*See id.* ¶¶ 13-15.) This results in a total of 146.5 hours of uncompensated work (120 hours of work at a regular rate or pay, plus 26.5 hours of overtime), which, if paid at the rates stated above, would total $3,993.75 in unpaid wages (*id.* ¶ 17).

As Plaintiff has met his burden of proof, he is entitled to recover unpaid wages pursuant to either the FLSA or the NYLL (whichever statute would provide him with greater damages), *see Wicaksono*, 2011 WL 2022644, at \*3, but he may not recover twice, *see Jin M. Cao*, 2010 WL 4159391, at \*3. As Plaintiff is claiming that he was not paid at all for the weeks in question, he would only be entitled, under the FLSA, to recover the statutory minimum wage for the first 40 hours that he worked in any of those work weeks, *see* 29 U.S.C. § 206(a), and, for the time period in question, the federal, statutory minimum wage was $7.25/hour, *id.* In contrast, under the NYLL, Plaintiff would be entitled to recover his regular pay rate of $25.00/hour for the first 40 hours of work during the weeks at issue, *see* N.Y. Lab. Law § 198(3), which would plainly result in higher damages. Further, in a case like this one, where the plaintiff has not been paid the minimum wage for his first 40 hours/week of work, the FLSA provides recovery for overtime hours at a rate of 150 percent of the minimum wage, *see Chun Jie Yin*, 2008 WL 906736, at \*4, whereas the NYLL allows for overtime recovery based on the plaintiff's regular pay rate, *see id.* Under the circumstances, Plaintiff is entitled to recover his unpaid wages in this case as calculated under the NYLL, which would afford him the higher compensation award. Specifically, using the computation that is permitted under the NYLL, I recommend that Plaintiff be awarded a total of $3,993.75 in unpaid wages, representing $3,000 for lost regular pay (*i.e.*, 120 hours, at the rate of $25.00/hour), plus $993.75, for lost overtime pay (*i.e.*, 26.5 hours, at the rate of $37.50/hour).

19

## B.    Plaintiff's Claims for Liquidated Damages

As set out above, both the FLSA and the NYLL also provide for the recovery of

liquidated damages. Indeed, both statutes mandate that the Court award liquidated damages to a

prevailing plaintiff, unless the defendant employer demonstrates that it acted in good faith or had

a reasonable basis to believe that it was acting in compliance with the law. (*See* Discussion,

*supra*, at Section I(C).)  Here, given Defendants' default, they have not met their burden of

proving that they acted in good faith, and thus liquidated damages should be awarded, based on

the provisions of both statutes.  29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).

As also noted above, however, courts in this Circuit are split regarding whether a plaintiff

can recover liquidated damages under *both* the FLSA and the NYLL, simultaneously.  (*See*

Discussion, *supra*, at Section I(C).)  In this Court's view, the determination of whether

simultaneous liquidated damages may be awarded should be based on the nature of those

damages; such damages should not be considered duplicative if they are intended to serve

different purposes.  As liquidated damages under the FLSA are intended to be compensatory,

whereas liquidated damages under the NYLL are intended to be punitive, this Court concludes,

along with the majority of courts in this Circuit, that both may be awarded.  *See, e.g., Yu Y. Ho*,

2014 WL 1998237, at *18; *Angamarca*, 2012 WL 3578781, at *8.

Under the FLSA, liquidated damages are equal to the amount of wage and overtime

damages that a plaintiff would be entitled to recover under the FLSA, even where, as here, the

plaintiff may be awarded higher wage and overtime damages pursuant to the NYLL.  *See*

*Angamarca*, 2012 WL 3578781, at *8.  Thus, under the FLSA, Plaintiff is entitled to receive

liquidated damages in the amount of $1,158.19, calculated based on the statutory minimum

wage – *i.e.*, $870 (for 120 hours, at the rate of $7.25/hour), plus $288.19 (for 26.5 hours, at the

20

rate of $10.875/hour). Separately, under the NYLL, Plaintiff is entitled to receive liquidated damages in the amount of $3,993.75 – *i.e.*, the amount of his actual lost wages, as calculated above. *See Angamarca*, 2012 WL 3578781, at \*8. In total, combining the amounts allowed under the two statutes, I recommend that Plaintiff be awarded $5,151.94 in liquidated damages.

### C.   Plaintiff's Claim for Prejudgment Interest

Plaintiff also seeks prejudgment interest on his unpaid wages and overtime. Under the FLSA, prejudgment interest should not be awarded, where FLSA liquidated damages are included in a judgment. (*See* Discussion, *supra*, at Section 1(C); *see also Fermin*, 93 F. Supp. 3d at 48.) Plaintiff may, however, recover prejudgment interest pursuant to the NYLL, which allows a prevailing plaintiff to recover such interest in addition to any liquidated damages, at the discretion of the Court. *Id.*

Under the NYLL, prejudgment interest is calculated based on the unpaid wages, but not liquidated damages, owed to Plaintiff, and, according to New York State law, the interest is awarded at a rate of nine percent per annum. *Najnin*, 2015 WL 6125436, at \*4. Further, as noted above, prejudgment interest may be calculated from either the "earliest ascertainable date the cause of action existed," which, here, was November 14, 2014, when Plaintiff was unable to cash a paycheck, or "from a single reasonable intermediate date," where damages were incurred at various times. N.Y. C.P.L.R. § 5001(b). In this case, Plaintiff seeks prejudgment interest on his unpaid wages (as calculated under the NYLL), in the amount of nine percent per annum, from the intermediate date of December 1, 2014, through August 31, 2015. (Plaintiff's Proposed Findings of Fact and Conclusions of Law, dated September 3, 2015 ("Proposed Findings") (Dkt. 25), ¶ 7.) This Court finds Plaintiff's request to be reasonable and in accordance with law, and has confirmed the accuracy of the interest calculation contained in his papers. (*See id.*)

21

I therefore recommend that Plaintiff be awarded prejudgment interest, as requested, in the
amount of $269.58.

### D.    Joint and Several Liability

Plaintiff requests that Defendants Global Structures and Hildreth be held jointly and
severally liable for the unpaid wages and liquidated damages owed to Plaintiff. (Proposed
Findings, at § III(B).)  Under both the FLSA and NYLL, "employers" – *i.e.*, those who
"possessed the power to control the workers in question . . . with an eye toward the economic
reality presented by the facts of each case," *Doo Nam Yang*, 427 F. Supp. 2d at 342-43 – may be
held liable for violations of each statute (*id.*).  In this case, Plaintiff's sworn assertions are
sufficient to support a finding that, while Plaintiff was performing work on behalf of Global
Structures, both the company and Hildreth had control over the "economic reality" of Plaintiff's
employment.

Plaintiff has not only stated in his submitted affidavit that Hildreth was the "Principal of
Global [Structures]" during the time period relevant to this action (Kernes Aff. ¶ 4), but also that
Hildreth "set and established [Plaintiff's] rates of pay and was the individual who was
responsible for issuing payroll checks on behalf of Global [Structures]" (*id.*).  In light of these
unrefuted statements, as well as the well-pleaded allegations of Plaintiff's Complaint (*see Compl.*
¶¶ 9, 10), which establish Defendants' liability upon their default, this Court concludes that
Hildreth and Global Structures should be found to have been employers of Plaintiff, such that it
would be appropriate for the Court to hold them jointly and severally liable.

### E.    Plaintiff's Claim for Attorneys' Fees

Plaintiff seeks $5,475.00 in attorneys' fees for 18.25 hours of work performed by counsel
on this action. (*See* Declaration of Justin S. Clark, dated Sept. 3, 2015 ("Clark Decl.")

22

(Dkt. 25-1), Ex. A.)  Plaintiff was represented by Justin S. Clark, Esq. ("Clark"), a third-year

associate attorney at the New York City law firm of Levine & Blit, PLLC.  (*Id.* ¶ 3.)  Clark

apparently focuses his practice on employment litigation, including wage cases (*see id.* ¶ 6), and

he bills at a rate of $300.00 per hour (*id.* ¶ 8).

Clark's hourly rate is comparable to the rate recently awarded by courts in this District to

experienced *partners* in wage-and-hour actions, and thus is inflated above the "prevailing [rate]

in the community for similar services by lawyers of reasonably comparable . . . experience" as

Clark – that is, the prevailing rate for associates of his level.  *Blum*, 465, U.S. at 895 n.11; *see*

*Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15cv112 (PAE), 2015 WL 7736551, at *3 (S.D.N.Y.

Nov. 30, 2015) (noting a reasonable rate to award partners working on wage-and-hour cases in

this district is $300 to $400 per hour, and reducing an associate's billable rate from $375 to $175

per hour); *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13cv6667 (PAE), 2015 WL

5122530, at *3 (S.D.N.Y. Aug. 31, 2015) (finding $175 per hour a reasonable rate for associates

who graduated in 2014); *see also Najnin*, 2015 WL 6125436, at *5 ("Courts in this district have

determined in recent cases that a fee ranging from $250 to $450 is appropriate for *experienced*

litigators in wage-and-hour cases" (emphasis added; internal quotation marks and citation

omitted)).  Given, though, that Plaintiff is seeking fees solely for Clark's work, and not for any

supervising partner, this Court recommends that Clark's fees be compensated at the hourly rate

of $250 per hour, a rate that is on the high side for associates performing comparable services in

this District, but is still below a partner rate.

In support of Plaintiff's request for fees, Clark has provided the Court with a copy of his

time records, which appear to have been maintained contemporaneously during the course of the

litigation, and which show the billable hours he expended during this action.  (*Id.* ¶ 10, Ex. A.)

23

Upon review the hours billed, this Court is satisfied that the tasks for which counsel billed –
including drafting, filing, and serving the Summons and Complaint, reviewing court Orders and
discussing such Orders with Plaintiff, and working on the default judgment motion (*id.*) – were
reasonable to perform. The Court also notes that the overall time billed on this matter – a total of
18.25 hours (*id.*), is modest on its face.

This Court has considered, however, whether Clark's use of a billing system that utilized
quarter hours as the minimum billing increment added some measure of inflation to his billing.
While it is not improper for an attorney to bill in 15 minute increments, doing so "adds an
upward bias in virtually all cases" and may warrant a reduction in the calculation of an attorney's
compensable time. *Lucky Brand Dungarees, Inc., v. Ally Apparel Res., LLC*, No. 05cv6757
(LTS) (MHD), 2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009). Here, upon review of Clark's
billing records, this Court has no reason to conclude that the time assigned to the tasks performed
by Clark was inflated, except with respect to one particular time entry: it is inconceivable that
Clark actually expended 15 minutes reviewing the Court's March 10, 2015 Order (*see* Clark
Decl., Ex. A), when that Order merely consisted of a memo endorsement reading: "OK, new date
4/10/15 @ 10:45 am" (Dkt. 5). Thus, this Court recommends striking that time entry, thereby
reducing Clark's claimed 18.25 hours to 18.00 hours.

Multiplying the reasonable number of 18.00 hours by the reasonable billing rate of
$250.00/hour yields a lodestar of $4,500.00. This Court sees no basis to make any adjustment to
this lodestar amount, and I therefore recommend that Plaintiff be awarded $4,500.00 in
attorneys' fees. I further recommend that Plaintiff be awarded the $925.73 in litigation costs that
Plaintiff claims to have incurred during the course of this action. (Clark Decl., Ex. B.) These

costs reflect reasonable litigation charges, such as filing and service fees, and are documented by an invoice submitted to this Court.  (*Id.*)

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's motion for fees be granted, and that, upon their default, Defendants be held jointly and severally liable for the total sum of $14,841.00, representing:

      a.    $3,993.75 in unpaid wages;

      b.    $1,158.19 in liquidated damages under the FLSA;

      c.    $3,993.75 in liquidated damages under the NYLL;

      d.    $269.58 in prejudgment interest;

      e.    $4,500.00 in attorneys' fees; and

      f.    $925.73 in costs.

Dated: New York, New York
       February 9, 2016

                                   SO ORDERED

                                   DEBRA FREEMAN
                                   United States Magistrate Judge

Copies To:

Plaintiff's Counsel (via ECF)

Global Structures, LLC
175 Varick Street, Suite 818
New York, NY 10014

Mr. John J. Hildreth
7811 Fieldstone Ct.
Ellicott City, MD 21043